IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-01932-WYD

IN RE: RICKY DONOVAN VAN VLEET, d/b/a FIRST FINANCIAL CENTRE, INC.

    Debtor,

DOUGLAS BAILEY,

    Appellant,

v.

TOM H. CONNOLLY,

    Appellee.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on an appeal by Appellant Douglas Bailey ("Appellant") arising out of the chapter 11 bankruptcy case of Ricky Donovan Van Vleet ("Debtor"), d/b/a First Financial Centre, Inc.[1] Throughout the course of the bankruptcy proceedings, Appellant has appealed more than eleven orders of the United States Bankruptcy Court for the District of Colorado ("Bankruptcy Court"). Here, Appellant appeals from the Bankruptcy Court's August 3, 2009 Order on Remand ("Remand Order"), which confirmed its May 23, 2008 order holding Appellant in

---

[1] On September 30, 2009, I entered an order dismissing four related appeals arising out of the same bankruptcy case. Included in that order is a detailed recitation of the facts as well as an extensive analysis of the pertinent issues. That order is incorporated by reference herein.

contempt ("Contempt Order") for interfering with the bankruptcy trustee's administration of the estate. Appellant appealed the Contempt Order, and on March 27, 2009, I remanded the case back to the Bankruptcy Court for further findings and conclusions. The Bankruptcy Court's Remand Order provided extensive supplemental findings and conclusions and ultimately confirmed the May 23, 2009 Contempt Order. Appellant now appeals the Remand Order.

II.     BACKGROUND

The following facts are relevant to the pending appeal. On October 11, 2006, Debtor filed a voluntary petition for relief under chapter 11 of the bankruptcy code. On January 24, 2007, Tom Connolly ("Trustee") was appointed as Trustee in this case.

    A.     <u>Trustee's Motion for Order to Show Cause</u>

On January 22, 2008, the Trustee filed a Motion for Order to Show Cause Why Debtor and Mr. Bailey [Appellant] Should Not be Held in Contempt and for Sanctions ("Contempt Motion"). The Contempt Motion claimed that Appellant should be held in contempt for violating the Bankruptcy Court's January 7, 2008 order ("Settlement Order"), authorizing the Trustee to settle a lawsuit in the courts of the Republic of Vanuatu. On January 23, 2008, Debtor filed his objection to the Contempt Motion.

The Contempt Motion was served on Appellant by mail to his then counsel, Mr. Rand. On January 23, 2008, Appellant filed his objection to the Contempt Motion and requested an evidentiary hearing. On January 24, 2008, the Bankruptcy Court conducted an initial hearing on the Contempt Motion. The Bankruptcy Court set a final evidentiary hearing ("Contempt Hearing") to commence on February 20, 2008 and

ordered both the Debtor and Appellant to appear, in person, at the hearing.

The Contempt Hearing commenced on February 20, 2008 and ultimately took place over five days, finally concluding on March 5, 2008.  Appellant failed to appear at the Contempt Hearing, but was allowed to participate through his newly retained counsel, Mr. Appel.  During the hearing, the Trustee sought to present evidence that Appellant had violated other related court orders in addition to the Settlement Order.  Appellant's counsel objected.  On February 22, 2008, during the Contempt Hearing, the Bankruptcy Court permitted the filing of a Bill of Particulars over the objection of Appellant's counsel.  The Bill of Particulars specified all of the issues pending before the Bankruptcy Court.

  B. Contempt Order

On May 23, 2008, after considering the relevant testimony, exhibits and pleadings, the Bankruptcy Court entered its Contempt Order.  The Bankruptcy Court found that Appellant directly, indirectly and surreptitiously engaged in conduct that violated the clear authority of the Trustee established in the Bankruptcy Code and set forth in both the Vanuatu Order, the Settlement Order and the Authority Order.[2]

    1. Vanuatu Order

The Bankruptcy Court's Vanuatu Order authorized the Trustee to "exercise all powers available to him as trustee and as representative of the estate holding the

---

[2] The Bankruptcy Court noted that the Trustee was attempting to administer an estate with most of its assets and businesses located miles away in the islands of Vanuatu.  The Trustee was located in Denver, Colorado and most of the remaining principals — Appellant Bailey, Robert Sugden, and Sean Griffen — were located in Vanuatu.

interests described in the Vanuatu Motion to operate those assets in Categories A[3] and B[4] and to preserve and protect them, pending further order of this Court." (Vanuatu Order.) The Vanuatu Order also authorized the Trustee to sell the estate's Category C[5] assets and/or cause the entity to sell the property free and clear of all liens, claims, interests and encumbrances of non-Vanuatu entities without further order of the Court and to apply the proceeds of such sale to pay ordinary and customary sale expenses. The Trustee was further authorized to sell or cause to sell the Category D[6] assets at one or more private sales in Vanuatu. Finally, the Trustee was authorized to elect and appoint directors and management in order to exercise his rights as equity holder in the Vanuatu businesses. Trustee was given control of the Vanuatu entities in all respects and Debtor was ordered to relinquish any such control. (Vanuatu Order.)

    2.    <u>Settlement Order</u>

The second order relevant to the Contempt Order was the Settlement Order. The Settlement Order authorized the Trustee to negotiate a settlement of Kakula Island Resorts Limited's interest in the judgment entered in the case titled *Kakula Island*

---

[3] Category A assets include Kakula Island, Tamanu on the Beach Resort and Encom Services.

[4] Category B assets include rights in a judgment held by Kakula Island Resorts, Limited against the Vanuatu government derived out of disputes over the development of Kakula Island. The judgment is on appeal.

[5] Category C assets include the estate's 100% equity interest in Harbor Villa and the Port Villa Townhomes.

[6] Category D assets include non-essential construction equipment of Encom Services, the residual assets for the former charter boat services of Kahuna Charters, office equipment and various vehicles.

*Resorts Limited and Douglas Bailey v. Russell Navi and the Government of the Republic of Vanuatu.*

   3.  Authority Order

  The third order relevant to the Contempt Order was the Authority Order, filed by the Bankruptcy Court on January 24, 2008. The Authority Order provided that the Trustee "is the duly appointed trustee of all assets held directly or indirectly by Ricky Donovan Van Vleet [Debtor] anywhere in the world, including those assets located in the Republic of Vanuatu." (Authority Order.) The order also gave the Trustee power and authority to manage and control all of Debtor's real and personal property.[7] Importantly, the Authority Order specifically ordered Appellant, Sean Griffin, Robert Sugden, "and anyone else purporting to act on behalf of" Debtor to "cease and desist to act for, or purport to act for, the Companies, the property, businesses, rights and opportunities and claims now held by the Trustee and his estate." (Authority Order.) Finally, the trustee was authorized to "take charge" of Debtor's real and personal property.[8] (Authority Order.)

---

  [7] This included the following entities: Encom Services Limited, Harbour Villa Limited, Kakula Island Resorts Limited, Kakula Holdings Limited, Tamanu Beach Club Limited, Emua Wharf Limited, Sought Pacific Anglers, Teouma Ba Marina Limited, and Kakuna Charters Limited.

  [8] This included stock, bank accounts, deposits, rent revenues, income, issues, profits, rental payments, lease payments, rent rolls, books, records, checks, drafts, notes, accounts receivable and payable, accounting information, records, contracts, claims including but not limited to claims against third parties arising from the properties, leases, files, furniture, certificates and licenses, fixtures, appliances, equipment, supplies, blueprints, building permits, property entitlements, soil reports, engineering reports and inspection reports.

III.   ANALYSIS

   A.   Standard of Review

On appeal, I may affirm, modify, or reverse the Bankruptcy Court's order, or remand with instructions for further proceedings. *Kimco Leasing,Inc. v. Knee,* 144 B.R. 1001, 1005 (N.D.Ill. 1992). I must review the findings of fact under a "clearly erroneous" standard. *Id.* A "finding of fact is clearly erroneous if it is without factual support in the record or if, after a review of all the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Davidovich*, 901 F.2d 1533, 1536 (10th Cir. 1990). I must review the Bankruptcy Court's conclusions of law, on the other hand, *de novo*. *Id*. "The burden of proof is on the party seeking to reverse a bankruptcy court's holding." *In re Johnson*, 236 B.R. 510, 518 (D.C.Cir. 1999). "That party must show that the court's holding was clearly erroneous as to its assessment of the facts or erroneous in its interpretation of the law, and not simply that another conclusion could have been reached." *Id*.

A bankruptcy court may sanction parties pursuant to its inherent authority. *See Providian Nat'l Bank v. Vitt (In re Vitt)*, 250 B.R. 711, 723 (Bankr. D. Colo. 2000). A Bankruptcy Court's issuance of civil contempt sanctions is reviewed under an abuse of discretion standard. *In re Armstrong*, 304 B.R. 432, 434 (10th Cir. BAP 2004). Under the abuse of discretion standard, a bankruptcy court's decision will not be disturbed unless the "adjudication of the contempt proceedings is based upon an error of law or a clearly erroneous finding of fact." *Id.* "An abuse of discretion occurs when the trial court's decision is arbitrary, capricious or whimsical or results in a manifestly

unreasonable judgment." *In re Lang,* 305 B.R. 905, 908 (10th Cir. BAP 2004) (internal quotations omitted). "As one court has put it, the question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.*

B. <u>Appellant's Appeal of Remand Order</u>

Appellant maintains that the Bankruptcy Court erred by: (1) asserting jurisdiction over criminal contempt proceedings; (2) issuing orders that were not enforceable by contempt as a matter of law; (3) holding Appellant in contempt of court for violating sections 542 and 704 of the Bankruptcy Code; (4) finding Appellant's conduct contemptuous; (5) depriving Appellant of due process by allowing amendment of the Contempt Motion during the Contempt Hearing; (6) holding Appellant in contempt of court for privileged actions; and (7) committing evidentiary errors. I will address each argument in turn.

1. <u>Whether the Contempt Order is a *Civil* Contempt Order</u>

First, Appellant argues that the Bankruptcy Court lacked jurisdiction to hold him in criminal contempt of court. I disagree and find that the Bankruptcy Court's Contempt Order and subsequent Remand Order held the Appellant in *civil* contempt of court, not criminal contempt. As the Bankruptcy Court stated in the Remand Order, the Appellant was held in *civil* contempt pursuant to its equitable powers set forth in 11 U.S.C. § 105 to vindicate the dignity of the Court. (Remand Order at 35.) The Tenth Circuit has held that § 105 "granted bankruptcy courts the power to sanction conduct abusive of the

judicial process." *Scrivner v. Mashburn,* 535 F.3d 1258, 1263 (10th Cir. 2008). Appellant's argument that the Bankruptcy Court's sanctions were criminal are not persuasive and contrary to controlling authority.

To be held in contempt, a court must find (1) the party violated a specific and definite court order; (2) the party had notice of the order; and (3) the party did in fact violate the order. *In re Lucre Management Group, L.L.C.*, 365 F.3d 874, 875 (10th Cir. 2004); *Consumers Gas & Oil, Inc. v. Farmland Industries, Inc.*, 84 F.3d 367, 371 (10th Cir. 1996). "Whether a contempt is civil or criminal turns on the character and purpose of the sanction involved. Thus, a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *In re Lucre Management Group, L.L.C.*, 365 F.3d at 877 (internal quotations and citations omitted). "In civil contempt, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pockets." *Id.* However, "a completed act of disobedience that the comtemnor cannot avoid is criminal in nature." *Id.*

After carefully reviewing the record and given the controlling law, I find the Bankruptcy Court's contempt sanction issued in the Remand Order to be civil in its nature. The Remand Order holds Appellant in civil contempt for violating court orders including the Vanuatu Order, the Settlement Order, and the Authority Order. The Remand Order confirms the Bankruptcy Court's February 28, 2008 order and judgment ordering Appellant to pay $1,000.00 per day to the Registry of the Court. "The daily

sanction is confirmed hereby until he [Appellant] ceases refusing to attend an examination . . . or until further Court Order." (Remand Order at 35.) Applying the *Lucre* Court's reasoning, while the $1,000.00 per day sanction is punitive, the Bankruptcy Court gave Appellant a "key to this prison" by only imposing this sanction until Appellant agrees to submit to a discovery examination. The sanction compels compliance as Appellant is only required to pay the $1,000.00 per day until he complies with the Bankruptcy Court's orders. Once Appellant complies, the monetary sanction ceases. Thus, I find that the contempt is civil in its purpose because the punitive component of the sanction was and is in Appellant's control. Finally, I find it significant that the contempt was denominated as "civil" in both the Contempt Order and the Remand Order. Accordingly, I reject Appellant's argument.[9]

### 2. Whether the Bankruptcy Court's Orders Were Enforceable by Contempt As a Matter of Law

Appellant next argues that the Remand Order should be reversed because the "[o]rders were not the kind that could be enforced by contempt." (Appellant's Opening Br. at 14.) Appellant claims that the Bankruptcy Court found him in contempt of orders — Vanuatu Order, Settlement Order and Authority Order — that failed to mandate or prohibit specific conduct and that his conduct did not violate any specific statute. This contention is without merit.

As I previously stated, "[t]o be held in contempt, a court must find the party

---

[9] In my September 30, 2009 Order, I found Appellant's $4,000,000 claim against KIR to be invalid and unenforceable. Thus, I will not address arguments involving this claim.

violated a specific and definite court order and the party had notice of the order." *In re Lucre Management Group, L.L.C.*, 365 F.3d at 875. Similar to the facts in this case, in *Lucre*, the bankruptcy court entered an order requiring that rent revenue was to be used only to pay property expenses at a hearing, not administrative costs associated with the bankruptcy filing. Lucre violated that order, and the bankruptcy court entered an order of contempt. *Id.* The Tenth Circuit affirmed the contempt order finding no abuse of discretion because Lucre was notified of the bankruptcy court's order and violated its terms. *Id.* 875-76.

Here, similar to *Lucre*, the Bankruptcy Court's orders gave the Trustee authority and control over the estate's assets. First, the Vanuatu Order authorized the Trustee to operate the Category A and B assets and elect and appoint directors and management in order to exercise his rights and control of the Vanuatu entities. (*See* Vanuatu Order.) Second, the Settlement Order gave the Trustee exclusive authority to negotiate a settlement of Kakula Island Resorts Limited's interest in a judgment. (*See* Settlement Order.) Finally, the Authority Order confirmed the Trustee's power and authority to manage and control the estate's real and personal property. Moreover, the Authority Order specifically directed Appellant, Sean Griffin, and Robert Sugden to cease and desist acting for the "Companies, the property, businesses, rights and opportunities and claims now held by the Trustee and his estate." (Authority Order.)

I find that the both the Vanuatu Order and the Settlement Order gave Appellant sufficient notice of the Trustee's exclusive control over all of the estate's assets, prohibiting Appellant from attempting to exercise similar authority. Further, the Authority

Order sufficiently notified Appellant that he was ordered to refrain from taking certain actions pertaining to the estate. Thus, the Bankruptcy Court appropriately found Appellant in civil contempt for conduct in violation of its court orders.

      3.     <u>Whether the Bankruptcy Court Erred in Determining Appellant's Conduct Violated Sections 542 and 704 of the Bankruptcy Code</u>

The Bankruptcy Court's Remand Order concluded that Appellant "interfered with the Trustee's duties under 11 U.S.C. § 704(a) and is in violation of 11 U.S.C. § 542(a), and consistent with 11 U.S.C. § 105(a), Mr. Bailey [Appellant] should be sanctioned for his purposeful misconduct." (Remand Order at 35.) Appellant argues that the Bankruptcy Court erred in holding him in contempt for violating §§ 542 and 704 of the Bankruptcy Code because these sections neither mandate nor prohibit specific conduct. Appellant further argues that he was not given notice that he violated these sections. I find Appellant's arguments unavailing.

    11 U.S.C. § 542(a) requires

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). In other words, § 542(a) requires that all property of the bankruptcy estate be accounted for and delivered to the trustee. Contrary to Appellant's argument, the language "shall deliver" mandates specific conduct. Here, Appellant was a nominee shareholder in Kakula Islands Resorts Limited, Encom Services Limited and Tamanu. The Bankruptcy Court properly found that Appellant's refusal to transfer his nominally

-11-

held stock shares to the Trustee to be a violation of § 542.

11 U.S.C. § 704 provides in part that

(a) The trustee shall--

   (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

   (2) be accountable for all property received;

   (3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

   (4) investigate the financial affairs of the debtor . . .

11 U.S.C. § 704. By definition, § 704 requires the trustee to take control of the estate's property and investigate the Debtor's financial affairs. In the Remand Order, the Bankruptcy Court cited *Grand Street Realty, LLC v. McCord*, 2005 WL 2436214 (E.D.N.Y. 2005) for the proposition that § 704 requires that a trustee investigate a debtor's property that may be in possession of others. The party in possession violates § 704 when it fails to cooperate with the trustee's investigation. *Id.* at *5 (issuing a sanction of attorneys' fees for a landlord's failure to permit a trustee into the debtor's leased premises to investigate debtor's equipment pursuant to § 704). Similar to the civil contempt sanctions issued in this case, a bankruptcy court has the power to award attorneys' fees under 11 U.S.C. § 105. *See In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990) (holding that bankruptcy courts have the power to "issue any order . . . necessary or appropriate to carry out the provisions of this title . . . [including] taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process . . . ." *Id.*; 11 U.S.C. § 105(a).

In the Remand Order, the Bankruptcy Court recited numerous instances where Appellant both intentionally failed to cooperate with and affirmatively acted to obstruct the Trustee's investigation of the estate. Accordingly, I find no error with the Bankruptcy Court's conclusion. To that end, the Bankruptcy Court did not abuse its discretion in determining that Appellant's acts of interference violated §§ 542 and 704 of the Bankruptcy Code.

4. Whether the Bankruptcy Court Erred in finding Appellant's Conduct Contemptuous

Appellant argues that the Bankruptcy Court erred in finding that specific conduct violated specific provisions of court orders and the Bankruptcy Code. Essentially, Appellant contends that the Bankruptcy Court's factual findings and conclusions were unsupported by the evidence in the record. I disagree and find that the Bankruptcy Court properly found Appellant's specific conduct to be contemptuous. In the Remand Order, the Bankruptcy Court makes specific and detailed findings as to how Appellant violated the Vanuatu Order, the Settlement Order and the Authority Order. *See In re Lucre*, 365 F.3d at 875 (holding that to be held in contempt, a court must find (1) the party violated a specific and definite court order; (2) the party had notice of the order; and (3) the party did in fact violate the order); *see Consumers Gas & Oil, Inc.*, 84 F.3d at 371. I address each court order in turn.

*The Vanuatu Order*

The Remand Order states that the Vanuatu Order is essentially a restatement of the Trustee's rights and authority set forth in 11 U.S.C. § 704. The Order communicated "to other courts and governmental authorities in Vanuatu that the

Trustee had certain authority under the Bankruptcy Code and under the direction of an Order of this Court." (Remand Order at 14.) The Remand Order goes on to detail Appellant's various violations of the Vanuatu Order including specific instances where Appellant "engaged in a methodical campaign, in concert with the Debtor and others, to ignore, evade, obstruct and otherwise eviscerate the authority imparted under . . . the Order." (Remand Order at 15.)

The Bankruptcy Court spends more than 13 pages of the Remand Order detailing and discussing specific violations of the Vanuatu Order committed by or directed by Appellant. Appellant objects to nearly all of these findings arguing that there is insufficient support in the record. I find these objections meritless as Appellant has continuously refused — even to this day — to submit to a deposition or examination or otherwise participate in the discovery process. I agree with the Bankruptcy Court that

> [w]here a party fails and refuses to appear the law creates a presumption, where the burden is on the party to prove a material fact peculiarly within his knowledge and he fails without excuse to testify, if introduced, would be adverse to his interests. The nonappearance of a litigant at the trial or his failure to testify as to facts material to his case and as to which he has especially full knowledge creates an inference that he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention. Consequently the evidence and inferences drawn concerning the evidence as to Mr. Bailey's conduct are viewed by the Court through this lens and with this presumptively negative inference.

(Remand Order at 11-12) (internal citations and quotations omitted).

Based on my careful review of the record, I find that the Bankruptcy Court did not err and that its findings of fact are clearly supported by ample evidence. A "finding of fact is clearly erroneous if it is without factual support in the record or if, after a review of all the evidence, we are left with the definite and firm conviction that a mistake has been

-14-

made." *In re Davidovich*, 901 F.2d at 1536.  Appellant has failed to prove that the Bankruptcy Court's findings of fact were clearly erroneous and not simply that another conclusion could have been reached.  *In re Johnson*, 236 B.R. 510, 518 (D.C.Cir. 1999).  Based on the evidence in the record, it is clear that Appellant had notice of the Vanuatu Order and committed specific violations of the Order.  *See In re Lucre*, 365 F.3d at 875; *Consumers Gas & Oil, Inc.*, 84 F.3d at 371.

### *The Settlement Order and Authority Order*

The Settlement Order was both a directive and a "reiteration of the exclusive and all-encompassing authority of the Trustee to negotiate a settlement of Kakula Island Resorts Limited's interest in the judgment entered in the case titled *Kakula Island Resorts Limited and Douglas Bailey v. Russell Nari and the Government of the Republic of Vanuatu*."  (Remand Order at 28.)  In its Remand Order, the Bankruptcy Court painstakingly described both the direct and indirect actions taken by Appellant to obstruct or conflict with the Trustee's authority to settle KIR's claim.  These violations included three letters written by Appellant, letters written by Robert Sugden at Appellant's direction and Appellant's use of the media to impede the Trustee's authority.

The Authority Order "reiterate[d] the authority of the trustee through the most clear and unequivocal language the court could use."  (Remand Order at 31.)  The Order specifically named each Vanuatu entity and "cited those persons whom, over the course of the case, had attacked the court's authority and orders and directly ordered those actions to cease."  (Remand Order at 31.)  Again, the Bankruptcy Court set forth, in detail, Appellant's violations of the Order, which included interference with the

trustee's ability to assert power over the estate's assets "through his [Appellant's] continued campaign of interference, distribution of misinformation, and fraudulent claims."  (Remand Order at 31.)

Consistent with my prior rulings, I reject Appellant's challenges to the Bankruptcy Court's numerous findings of fact with respect to violations of the Settlement Order and the Authority Order.  The extensive record — which Appellant refused to participate in through depositions, court appearances or examinations —  supports the Bankruptcy Court's findings of fact.  Appellant has again failed to prove that the Bankruptcy Court's assessment of the facts in the Remand Order are clearly erroneous.  To that end, the Bankruptcy Court properly found Appellant's conduct contemptuous.

### 5. Whether the Bankruptcy Court Committed Error in Allowing Amendment of the Contempt Motion

Appellant next argues that the Bankruptcy Court violated Appellant's due process rights when it permitted the Trustee to amend the pleadings to conform to the Bill of Particulars and the evidence presented during the February, 2008 Contempt Hearing.

Fed. R. Civ. P. 15(b)(1) allows the court to permit amendment of the pleadings "when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice the party's action or defense on the merits." *Id.*  Fed. R. Bankr. P. 9020 states that contempt proceedings are governed by Fed. R. Bankr. P. 9014.  Although Fed. R. Bankr. P. 9014 does not specify that Fed. R. Civ. P. 15 applies to contempt proceedings, Fed. R. Bankr. P. 9014(c) permits the court to apply additional rules, such as Fed. R. Civ. P. 15, to the proceedings.

Here, the Trustee moved to amend the pleadings to conform to the Bill of

Particulars during the Contempt Hearing. Thus, Appellant had the burden of proving that the additional evidence would prejudice his defense. I find Appellant failed to satisfy his burden of proving prejudice. This bankruptcy case has been pending for more than two years and has included extensive discovery and numerous hearings, most of which Appellant has refused to participate in. Appellant has also failed to appear at examinations and depositions and defend against many of the Trustee's allegations. Appellant's arguments that he was either surprised by the Trustee's additional evidence or had insufficient time to prepare a defense are not persuasive. The additional evidence concerned Appellant's interference with the bankruptcy estate in Vanuatu — information that was known to the Appellant. Further, the Trustee's Bill of Particulars was filed in the early stages of the five-day Contempt Hearing. Appellant had the opportunity to appear at the Contempt Hearing and to cross-examine the Trustee and present evidence refuting the Trustee's allegations. Appellant refused to appear. Accordingly, I do not find that Appellant proved that his defense was prejudiced as a result of the amendment to the pleadings. Thus, based on the record before me, the Bankruptcy Court did not err in permitting the amendment of the pleadings at the Contempt Hearing.

      6.    <u>Whether Appellant's Conduct was Privileged</u>

Here, Appellant argues that he was excused, under some form of legal privilege, from attending the 2004 examination or the Contempt Hearing because he was never served with a subpoena. In my September 30, 2009 order, I addressed this issue in detail and found that Appellant failed to satisfy his burden of showing clear error or an

abuse of discretion on the part of the Bankruptcy Court in holding the Appellant in civil contempt of court for failure to appear at the Contempt Hearing.[10]  Accordingly, I reject Appellant's argument that his absence at the Contempt Hearing was privileged.  I further reject Appellant's claim that he was privileged to act in defiance of the Bankruptcy Court's three orders (Vanuatu Order, Settlement Order, and Authority Order).  Appellant offers no support for this contention, and based on my review of the record, the Bankruptcy Court properly found Appellant's interference with the administration of the bankruptcy estate to be contemptuous conduct.

       7.    <u>Whether the Bankruptcy Court Properly Admitted Evidence at the Contempt Hearing</u>

Finally, Appellant challenges the Bankruptcy Court's numerous evidentiary rulings that formed much of the basis for its contempt findings.

At the Contempt Hearing, the Trustee presented a significant amount of evidence that the Bankruptcy Court both admitted and denied.  I note that the proceedings were hindered by Appellant's refusal to appear as many of the documents were within the Appellant's individual knowledge or had been produced to the Trustee by Appellant.  Therefore, I am dubious as to the validity of Appellant's challenges.  Again, Appellant had every opportunity to challenge the Bankruptcy Court's evidentiary rulings at the

---

[10] I also noted in my September 30, 2009 order that it was unclear as to whether Appellant's deposition/examination was to take place pursuant to Rule 2004 or Rule 7030.  Thus, it was impossible for me to rule on whether a subpoena was required to compel Appellant's attendance for the deposition/examination.  However, I was able to rule on the issue of whether contempt was appropriate for Appellant's failure to appear at the Contempt Hearing, which ultimately disposed of Appellant's appeal in its entirety.

Contempt Hearing. He could have refuted the Trustee's evidence and submitted contrary evidence of his own. He refused to do so. In light of this, I find the Bankruptcy Court did not err in noting that Appellant's refusal to attend the Contempt Hearing created certain unavoidable negative inferences. *See Gray v. Great American Recreation Ass'n, Inc.*, 970 F.2d 1081, 1082 (2d. Cir. 1992) (stating that "the non-appearance of a litigant at the trial or his failure to testify as to facts material to his case and as to which he has especially full knowledge creates an inference that he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention") (internal citations omitted).

The Tenth Circuit has held that erroneous evidentiary rulings are "harmless unless a substantial right of a party is affected." *United States v. Charley*, 176 F.3d 1265, 1282 (10th Cir. 1999) (internal quotations omitted). "An error affecting a substantial right of a party is an error which had a substantial influence on the outcome or [which] leaves one in grave doubt as to whether it had such effect." *Id.* After reviewing the record as a whole and given the negative inference of Appellant's refusal to appear, I find that the Bankruptcy Court's evidentiary rulings at the Contempt Hearing were proper.[11] However, even if there were some erroneous evidentiary rulings, I find that they were harmless in that they did not affect the Appellant's substantial rights. There was ample properly admitted evidence for the Bankruptcy Court to conclude that Appellant acted directly and indirectly in a continued effort to interfere with the

---

[11] I note that many of Appellant's evidentiary challenges involve his contention that the Bankruptcy Court erred in allowing amendment of the pleadings. Since I previously rejected this claim, I find these arguments moot.

administration of the bankruptcy estate.

IV. <u>CONCLUSION</u>

Based on the foregoing, this appeal is **DENIED** and **DISMISSED.** Therefore, the Bankruptcy Court's Remand Order is **AFFIRMED.**

Dated: August 10, 2010

BY THE COURT:

s/ Wiley Y. Daniel  
Wiley Y. Daniel  
Chief U. S. District Judge